| | | |
|---|---|---|
| Melissa W. individually and as Parent of her minor child, S.W., | : | |
| | : | |
| *Plaintiffs*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | No. 25-1040 |
| | : | |
| Elkhorn Area School District, | : | |
| | : | |
| *Defendants.* | : | |

## COMPLAINT

### I.   PARTIES

1.  Melissa W. is the parent of a minor child with a disability, S.W.. During all times relevant to the instant action S.W. was enrolled in the Elkhorn Area School District.

2.  S.W. is a student who, at all times relevant to the instant action, is qualified to receive special education services from the Elkhorn Area School District.

3.  Elkhorn Area School District (EASD) is a duly incorporated school district under Wisconsin law, and during all times pertinent to this action, under federal and state law, was responsible for providing S.W. a free appropriate public education (FAPE).

### II.   VENUE AND JURISDICTION

4.  Venue and jurisdiction are proper in this court pursuant to 28 U.S.C. §§ 1331 and 1391; and 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A).

### III.   FACTS

5.  S.W. ("Student"), is a 14-year-old child with a disability who is open enrolled in EASD. Student is currently in the 9th grade.

6.  Student has struggled with impulsivity since at least the 5th grade (2021-2022 school year).

1

7. At the end of 5th grade, an EASD teacher approached M.W. ("Parent") due to increasing academic and behavioral concerns regarding Student. This teacher indicated to Parent that she believed Student had ADHD.

8. The Student's teacher had notice of the District's obligation to locate, identify, and evaluate all children with disabilities.

9. But Student's teacher did not take steps to ensure Student was timely evaluated.

10. At this time, it was Parent's understanding based upon discussion with the teacher, that before the school could do anything to help her or her child, Parent must first provide the school with documentation of an ADHD diagnosis. So in response to the teacher's concerns, Parent sought professional help from a healthcare professional to evaluate Student to determine if he had ADHD.

11. As of this date, 12-19-2025, the District publishes the following on their website:

> The Elkhorn Area School District is required to locate, identify, and evaluate all children with disabilities, including children with disabilities attending private schools in the school district, and homeless children. The process of locating, identifying, and evaluating children with disabilities is known as child find. A request for evaluation is known as a referral. When the district receives a referral, the district will appoint an Individualized Education Program (I.E.P.) team to determine if the child has a disability and if the child needs special education services. The district locates, identifies, and evaluates all children with disabilities who are enrolled by their parents in private (including religious) schools, elementary schools, and secondary schools located in the school district.
>
> A physician, nurse, psychologist, social worker, or administrator of a social agency who reasonably believes a child brought to him or her for services is a child with a disability has a legal duty to refer the child, including a homeless child, to the school district in which the child resides. Before referring the child, the person making the referral must inform the child's parent that the referral will be made.
>
> Others, including parents/guardians, who reasonably believe a child is a child with a disability, may also refer the child, including a homeless child, to the school district in which the child resides.

2

Referrals must be in writing and include the reason why the person believes the child is a child with a disability. A referral may be made by contacting Ryan McBurney, Director of Special Education, Elkhorn Area School District, by contacting her at 3 North Jackson Street, Elkhorn, WI 53121, 262-723-3160, or by email at mcbury@elkhorn.k12.wi.us.

*See* Elkhorn Area School District, "Special Education," https://www.elkhorn.k12.wi.us/page/special-education (accessed Dec. 19, 2025).

12. Based upon information and belief, Parent was intentionally misled by the teacher as to it being her responsibility to first get Student medically evaluated and a referral from a healthcare professional prior to EASD evaluating Student for special education.

13. In May 2022, Student was placed on a waitlist with Children's Hospital of Wisconsin for an assessment related to the suspected disability.

14. During the following school year (2022-2023), Student continued to exhibit disruptive behaviors and impulsivity. Parent sought outside therapy to address Student's behavioral issues while Student remained on a waitlist at Children's Hospital for ADHD testing. EASD was aware that Student received mental health services and was also aware of Parent's effort to secure testing related to suspected ADHD.

15. Near the beginning of the following school year (2023-2024), on October 16, 2023, Parent emailed Student's teacher related to her concerns regarding Student and the continued suspicion of ADHD; Parent indicated that she was still in the process of seeking evaluation for Student's diagnosis. In her email to EASD staff, Parent stated, "I really don't know what more I can do. If you or any of your colleagues have any suggestions, please let me know!"

16. EASD Staff did not offer any assistance in initiating an evaluation and continued to mislead Parent to believe it was her responsibility to get the assessment prior to any obligation by the District.

17. The EASD staff that received this email were aware of their obligations under the law to initiate a special education evaluation of Student and did not.

18. During this time and all times previous, Parent's actions show that she had no reason to believe EASD had any responsibility to evaluate Student or that EASD had violated any laws. She was led to believe that the gateway to special education services was a

diagnosis and referral from a healthcare professional that she was diligently trying to secure.

19. During the 2023-2024 school year, the EASD's Associate Principal routinely called Parent to report Student's worsening behaviors – calls which occurred at least once per week.

20. Parent reports feeling like a "broken record," having to constantly relay her concerns to EASD staff regarding Student's suspected ADHD as the cause of his increasing difficulties and pleading for more help.

21. EASD issued at least 18 disciplinary referrals to Student for behavioral infractions between the 2022-2023 school year through the 2023-2024 school year.

22. In addition to seeking a formal assessment of Student through Children's Hospital, Parent secured mental health counseling for Student to be provided in the school setting in January of 2024. EASD was aware that a mental health counselor was providing services to Student in the school building.

23. Student's behaviors continued to worsen over the 2023-2024 school year, resulting in EASD holding a final warning meeting at the end of February 2024. The meeting's intent was to discuss strategies to support Student and to serve as his final warning prior to EASD taking escalated disciplinary action against him.

24. At this meeting, Parent again notified EASD that she was seeking outside testing for disability suspicions and she was again misled that this was the appropriate procedure to receive disability related support.

25. The EASD supervisory staff who participated in the final warning meeting were aware of their obligations under the law to initiate an evaluation of Student upon suspicion of disability. They did not.

26. EASD did not notify Parent of her procedural safeguards or right to have Student evaluated by EASD at this meeting or any time prior to this meeting. Her actions continued to show that she had no reason to believe that EASD had an obligation to evaluate Student or that any violation of the law had occurred.

27. On March 5, 2024, approximately one week after Student's final warning meeting, Student engaged in unwanted contact–a hug–with his teacher, who asked Student to stop.

4

Student invited other students to join in the hug and did not release the hug despite being asked.

28. On March 6, 2024, in response to the incident, EASD suspended Student indefinitely.

29. On March 12, 2024, Children's Hospital formally diagnosed Student with ADHD based upon ongoing assessments and previous collection of data. This diagnosis was provided to EASD.

30. The assessment concluded:

> [Student], now 12 years 7 months of age, has had increasing struggles with attention and impulsivity over the past 2 years, including a recent incident that has precipitated a school hearing for possible expulsion. Declining school performance, decreased self control for age, plummeting self esteem, low mood, frustration, and anger have all snowballed this year. At this point, it is reasonable to attribute most of these worsening behaviors – including [Student's] failure to read important social cues/follow social norms – to ADHD. Specific learning impairment may contribute as well, and merits psychology evaluation.

31. After receipt of diagnosis, EASD initiated a special education evaluation of Student on March 14, 2024 via sending Parent a consent for testing form. Parent signed the consent form the same day she received the paperwork.

32. Parent signed releases of information for EASD to gather information from Children's Hospital and private mental health providers on March 15, 2024.

33. On April 12, 2024, EASD convened an IEP team meeting. Per the invite, the purpose of the meeting was to determine eligibility for special education, develop an initial IEP, determine initial placement, and conduct a manifestation determination review (MDR) for the March 5, 2024 incident.

34. During the meeting, the team determined Student was eligible for special education under the IDEA under the category of Other Health Impairment (OHI).

35. In its evaluation report, EASD described Student's need for special education based on his inattention and impulsivity, which "affect his classroom performance and behavior, as well as his achievement in math and writing."

36. These identified needs were the same that were identified by the teacher back at the end of Student's 5th grade year.

37. EASD did not conduct a functional behavior assessment (FBA) as part of the evaluation.

38. After the team concluded the evaluation report review, the team moved into MDR discussion regarding the March 5 incident.

39. At no point during the MDR was the doctor's input from Children's Hospital discussed or considered nor were any outside providers asked for input.

40. In a split decision, the team determined that Student's March 5 conduct of hugging the teacher was not caused by nor directly related to his disabilities. The MDR report describes that "while ADHD can look differently for different people, the majority of the team did not believe that the behavior in question was consistent with *how most students with ADHD act.*" The decision was therefore based upon general knowledge of ADHD presentation in other students and not specifically tailored to Student's specific disability related manifestations.

41. On April 29, 2024, EASD held an expulsion hearing and the Elkhorn Area School Board expelled Student from the District through the age of 21 for repeated refusal to follow school rules.

42. The MDR team never conducted a manifestation determination review for *repeated refusal to follow school rules* - the meeting on April 12, 2024 only reviewed the March 5 hugging incident.

43. Student's IEP team reconvened on May 10, 2024 to develop an IEP and placed Student in an alternative setting during his expulsion.

44. Student's May 10, 2024 IEP and all IEPs created thereafter indicate that Student's behavior impedes his learning and that of others.

45. From Student's initial assessment completed in April of 2024 through present, the District has not conducted a functional behavioral assessment.

46. All of Student's IEPs include the following Goal:

> [Student] will be able to maintain expected classroom behavior with 3 or fewer redirections in a 60-minute interval (as evidenced by completing non-preferred

6

tasks, using expected language and physical boundaries, and complying with non-preferred directives) in ⅗ opportunities.

47. Since diagnosis, Student has been prescribed medication. Student has experienced no major behavioral infractions since starting his medication and many of his behavioral challenges and related symptoms have substantially subsided. Student presents no safety risk in the school environment.

48. On March 27, 2025, Parent, through counsel, sent EASD a letter notifying EASD of suspected denial of FAPE, requesting records and an opportunity to mediate the matter.

49. On April 10, 2025, in exchange for Parent agreeing to forego filing of an administrative due process hearing request, the EASD agreed to toll the statute of limitations for 90 days to pursue mediation.

50. On July 2, 2025, Plaintiffs through their attorney filed a request for an expedited due process hearing under the Individuals with Disabilities Education Act (IDEA) and Wis. Stats. 115, with the Wisconsin Department of Public Instruction against EASD.

51. The complaint requested the following remedies:
    a. Finding that Student's conduct leading to his expulsion was a manifestation of his disability.
    b. Expulsion expunged.
    c. The District ordered to conduct a functional behavioral assessment or update Student's behavior intervention plan as needed.
    d. Compensatory services for exclusion from school.
    e. Compensatory services for delay in finding Student eligible for an IEP and any other denial of FAPE.
    f. Any other appropriate remedies.

52. On July 17, 2025 a prehearing conference was held to determine the issues for hearing. Those issues were:

    **Issue 1** - Did the District incorrectly determine that the Student's conduct on March 6, 2024 was not a manifestation of his disability, and consequently, improperly expel the Student from school on April 29, 2024?

    **Issue 2** - Did the District fail to timely refer and evaluate the Student for special education?

7

53. On July 28, 2025, EASD requested that the second hearing issue be amended to specify a timeframe. With agreement of parties, the second hearing issue was amended as: "Did the District fail to timely refer and evaluate the Student for special education during or after the 2021-2022 school year?"

54. During prehearing conferences, deadlines for motions, exchange of exhibits, and hearing dates were established. Parties agreed that there would be no pretrial motions and EASD specifically represented that no prehearing motions would be filed.

55. On August 18, 2025, over a month after the prehearing conference and without any notice to Plaintiffs, EASD filed a Motion for Summary Judgement related to Issue 2 on the grounds that the claims were time-barred by Wisconsin's one-year statute of limitations.

56. On August 22, 2025, per scheduling order of the court, Parent timely filed a response to the motion.

57. ALJ Pederson issued a decision on September 8, 2025 dismissing Issue 2. (Exhibit A).

58. The decision on September 8, 2025 was erroneous. Plaintiffs are appealing this decision via the instant Complaint.

59. A subsequent Order amending Issue 2 was issued on September 9, 2025. Issue 2 now stated: Since April 10, 2024, did the District fail to timely provide special education services to the Student?

60. Hearing was held on September 24 and 25, 2025. A decision was issued on November 10, 2025. The hearing decision is attached as Exhibit B.

61. Due to the order on September 8, 2025, Parent was not able to fully develop a record related to obvious violations of the IDEA in previous school years related to EASD's failure to timely refer Student for special education evaluation.

62. The ALJ erroneously found that EASD properly conducted a MDR, and also timely provided special education services to Student.

63. The decision was made in error in failing to:
    a. find that EASD improperly expelled Student for behavior that was a manifestation of his disability;
    b. find that EASD failed to provide Student a FAPE;

8

c. order compensatory education, expungement of expulsion, and completion of FBA or updated behavior intervention plan.

64. Plaintiffs file the instant Complaint as an appeal of the ALJ's decisions on September 8, 2025 and November 10, 2025 due to the several errors of fact and law.

## IV. CAUSES OF ACTION

### First Cause of Action - Appeal of ALJ Decision on September 8, 2025

65. Plaintiffs incorporate by reference all allegations set forth above and below.

66. The ALJ erred in dismissing Issue 2 on September 8, 2025. (Exhibit A).

67. The Motion filed by EASD was brought without any notice to Plaintiffs and previous representation by counsel that no such motion would be filed.

68. Plaintiffs only had four days to file response to the motion.

69. The ALJ procedure in allowing the Motion to proceed without notice to Plaintiffs and opportunity to present testimonial evidence was fundamentally unfair and contrary to the IDEA.

70. Among the rights IDEA affords parties to any hearing conducted pursuant to §§ 300.507 through 300.513 or §§ 300.530 through 300.534, or an appeal conducted pursuant to § 300.514, is the right to present evidence and confront, cross-examine, and compel the attendance of witnesses. 34 C.F.R. § 300.512(a)(2).

71. The United States Department of Education has provided guidance related to summary judgment motions without opportunity for hearing and has stated the following:

> IDEA does not address procedures for dismissal of due process hearing requests outside of the context of the sufficiency of the complaint. In other words, the only provision in IDEA or its implementing regulations that contemplates summary dismissal is when the due process complaint is insufficient. To the extent any summary proceedings in a hearing on a due process complaint - other than a sufficiency determination – limit, or conflict with, either party's rights, including the right to present evidence and confront, cross-examine, and compel the attendance of witnesses, ***we believe such proceedings can be used only when both parties consent to use the summary process*** (e.g., cross-motions for summary judgment).

9

*Letter to Zirkel*, OSEP Policy Letter 22-04, April 15, 2022 (emphasis added).

72. Here, not only was there a lack of consent to use the summary process, there was explicit affirmation by EASD that they did not intend to use summary process prior to filing the motion.

73. The only manner under which EASD could summarily challenge the Due Process hearing request was via sufficiency challenge. Under 34 C.F.R. § 300.508(b), EASD was required by law to challenge the sufficiency of the complaint within 15 days of receiving it. EASD's summary challenge came 47 days after filing, and over a month after the hearing issues were already established at pretrial conference. A conference at which they represented no such motion would be filed.

74. Even if the summary judgment motion can be read as a sufficiency challenge, the ALJ correctly determined that the Due Process Hearing Request sufficiently stated a claim for relief, so it should have been denied. Decision p. 2.

75. Contrary to the ALJ's statement in the Decision, the matter was not converted from expedited to non-expedited. The clarification of timelines was only changed due to the expedited timelines requiring counting of school days instead of calendar days. This matter was still expedited and operating under an expedited timeline further exacerbating Plaintiffs' ability to conduct pretrial factfinding. Id. p. 1.

76. The dismissal of Issue 2 must be reversed as the law demands Plaintiffs be allowed the right to present evidence and confront, cross-examine, and compel the attendance of witnesses related to this motion. Summary judgment is explicitly not allowed under these circumstances and must be reversed.

77. Even if summary judgment was allowed, which it is not, the ALJ made both factual and legal error in deciding the Motion.

78. The ALJ erred in applying the incorrect legal analysis in finding that Issue 2 was barred by the statute of limitations.

79. The ALJ erred in not first demanding that EASD provide undisputed factual proof that the issue was time barred. Instead, without the opportunity to present testimonial evidence or cross examine witnesses, the ALJ required Plaintiffs to carry the burden to disprove EASD's motion.

10

80. The ALJ only relied upon the occurrence of the violation and providing of procedural safeguards and did not conduct any assessment of Parent's knowledge or discovery of the claim. EASD only argued that the claims were barred due to their *occurrence* more than a year prior to the filing.

81. Both the procedural safeguards provided by EASD and the Wisconsin DPI model procedural safeguards state that: "The due process complaint must allege a violation that happened not more than one year before you or the school district ***knew or should have known*** about the alleged action that forms the basis of the due process complaint."

82. The ALJ incorrectly opines that Parent was "superimposing" the knew or should of known language upon the Wisconsin one-year statue of limitations, but ignores that it was EASD and the Department of Public Instruction that made this conclusion that the knew or should have known date was applicable under Wisconsin Law by including the language in the procedural safeguards provided to Parent. Decision p. 4.

83. Therefore, the ALJ incorrectly applied an occurrence rule when a discovery rule should have been applicable.

84. As evidentiary support for this incorrect standard, the ALJ singularly relied upon an affidavit that the notice of procedural safeguards was provided to Parent.

85. It is wholly illogical that the procedural safeguards notices that were the singular factual component of EASD's motion are not held at their face value for an accurate statement of the law. If the ALJ is correct in that the EASD procedural safeguards misstate the law in Parent's favor related to application of the discovery rule, then there is no reason that these supposedly incorrect procedural safeguards should be deemed to have provided Parent any notice of her actual filing rights. Under Wisconsin Law, Parent was not provided notice of her rights if that notice was actually incorrect.

86. To the extent the ALJ is correct that the statement of law in the procedural safeguards is incorrect then by providing these safeguards to Parent, EASD was making an explicit misrepresentation to Plaintiff regarding her rights. A Parent should be able to reasonably rely upon DPI and her local school district's statement of the law when bringing an action, and conversely a local school district should not be able to benefit from a misstatement of law which causes a Parent to delay filing of a claim.

87. The ALJ should have determined the date Parent knew or should have known about the alleged action that forms the basis of the due process complaint. The ALJ did not as she

11

incorrectly determined that this is not the appropriate standard. Instead, she only assessed when a purportedly inaccurate procedural safeguards document was provided to Parent.

88. There were no facts presented to establish a knew or should have known date, so the motion was facially unsupported and should have been denied.

89. Parent should have been given opportunity to present testimonial and documentary evidence on this issue. The ALJ faults Parent for not collecting self-serving affidavits in support of her own motion, but fails to recognize that the evidence needed to support Parent's argument would necessarily include testimony from staff which communicated with Parent during the previous school years and assessment of documents in EASD's control related to the subject.

90. The record establishes that Parent neither knew or should have known about the alleged action that forms the basis of the due process complaint more than one year prior to filing her action.

91. Applying an occurrence rule to Wisconsin's one year statute of limitations would render the limitation period unconstitutional under the supremacy clause because the limitations period would be so strict and short so to deny the protections endowed to Students under the IDEA by Congress.

92. The ALJ erred when failing to consider exceptions to the statute of limitations that were explicitly raised by Plaintiffs without any presentation of evidence to the contrary. These exceptions were subject to material disputed fact that demanded further fact finding. The ALJ rejects the exceptions by placing a heightened pleading standard on Parent's Due Process Hearing Request.

93. Due to the ALJ dismissing and changing Issue 2, Parent was not allowed at hearing to present relevant evidence related to the obvious child find issues more than a year prior to filing. Even if Issue 2 was properly dismissed and shortened, the historical evidence should have been allowed to show that EASD's MDR was flawed in that there should have been an operable IEP in place by the time of MDR.

94. WHEREFORE, pursuant to 42 U.S.C. § 1415(i)(2)(A) Plaintiffs are aggrieved parties and are entitled to an order from this court reversing the dismissal of Issue 2 as originally stated, and remanding Issue 2 to the Division of Hearings and Appeals for hearing. In the alternative, Plaintiffs are entitled to an order that Issue 2 is not barred by the statute of limitations based upon the record evidence and are entitled to hearing on Issue 2 and the ability to introduce additional evidence in support of Issue 2 in this Court.

12

**<u>Second Cause of Action - Appeal of ALJ Decision on November 10, 2025</u>**

95. Plaintiffs incorporate by reference all allegations set forth above and below.

96. On November 10, 2025 the ALJ issued a second decision dismissing all claims asserted by Plaintiffs. This decision was made in error.

97. The record presented at hearing preponderantly showed that EASD incorrectly determined that the Student's actions were not a manifestation of Student's disability and that Parent was entitled to relief.

98. The ALJ's decision that the incident was not a manifestation was factually erroneous.

99. The ALJ erroneously demanded a higher standard of proof beyond doubt rather than a preponderance of evidence that the law requires. Applying this incorrect standard, the ALJ opined that an alternative hypothesis considered and rejected by the private doctor nullified her professional opinion.

100. The ALJ erroneously relied upon EASD staff opinions by individuals that admitted in hearing and documented in the MDR documents that their decision was based upon how ADHD typically manifests in children rather than the individual analysis required under the law. The high standard and scrutiny applied to the private doctor was not applied to the EASD staff.

101. The ALJ erroneously accepted as fact the descriptions of the incident provided by EASD witnesses at hearing when documentary evidence directly contradicted those descriptions of the incident.

102. The ALJ erroneously ignored that the expulsion order was entered against Student for a history of repeated behavioral infractions - not the singular incident on March 5 that the MDR team assessed. All infractions together should have been considered by the MDR team, and the evidence overwhelmingly showed that the pattern of behavior was a manifestation of Student's disability. No manifestation analysis was ever conducted by EASD related to the actual reason for expulsion, so the decision and MDR conclusion cannot stand.

103. The ALJ erroneously ignored several arguments made by Plaintiffs at hearing, including, *inter alia,* that Student's IEP goals explicitly stated that Student's disability manifests in a manner which causes him to not follow adult directives and cross physical

boundaries. Witnesses at hearing confirmed this conclusion related to how Student's disability manifests which directly contradicted the MDR conclusion.

104. The ALJ completely misstates testimony in the decision. Among these misstatements was a conclusion that the private doctor testified that she would not have provided documents to EASD if requested - where at hearing the doctor actually testified to the opposite.

105. The ALJ improperly placed a burden upon Parent to produce documents to EASD where it was EASD's burden to conduct an appropriate evaluation and analysis of whether the conduct was a manifestation of Student's disability. Student's rights should not have hinged on the vigilance or presentation of documents by the family during the evaluation process and MDR.

106. The ALJ erroneously limited the issues for hearing. In addition to the previous dismissal and shortening of Issue 2, the ALJ also drastically narrowed Issue 1. The ALJ concludes when rejecting the argument related to the FBA:
> "The Parents did not raise the Student's evaluation as an issue that was noticed for hearing and did not seek to amend the hearing issues in a timely manner under Wis. Stat. §115.80(1)(g). This issue has not been properly brought before the tribunal and, accordingly, the argument will not be addressed herein."

107. In Plaintiffs Due Process Hearing Request, Plaintiffs specifically requested an order that the District conduct an FBA.

108. Further, in the Hearing Request, Plaintiffs explicitly challenged the sufficiency of the evaluation upon which the MDR relied stating that the evaluation "did not include appropriately current observation of Student's behavioral needs in the school setting or an appropriate FBA. *The evaluation was not comprehensive.*" DP Hearing Request, Paragraph 23 (emphasis added).

109. The EASD special education director admitted at hearing that a FBA should have been conducted as part of the evaluation. This failure was a fatal flaw in the MDR.

110. The ALJ concluded that the MDR was appropriate because they reviewed " the school psychologist's assessment report the evaluation report." Dec. p. 9.

111. The MDR occurred at the evaluation review meeting. The evaluation was the central, and only document, that the team had to base its decision. Therefore, Issue 1, which is a challenge to the MDR decision was clearly not only a challenge to the conclusion of the

14

MDR team but the basis and methodology taken in coming to that decision. The evaluation comprehensiveness and need to conduct an FBA was clearly an issue for hearing - explicitly and unambiguously challenged in the initial complaint.

112. EASD staff admitted that an FBA should have been conducted and the record clearly established that one should be ordered.

113. Further, the record preponderantly shows that the evaluation upon which the team relied was not comprehensive. As this evaluation was the only document upon which Student's disability was assessed, the MDR was fatally flawed.

114. WHEREFORE, pursuant to 42 U.S.C. § 1415(i)(2)(A) Plaintiffs are aggrieved parties and are entitled to an order from this court ordering EASD to expunge Student's expulsion, conduct an FBA, and provide compensatory education services for multiple denials of FAPE.

## V. PRAYER FOR RELIEF

115. WHEREFORE, Plaintiffs hereby seek an order from this court that:
   a. Requires EASD to expunge Student's expulsion.
   b. Requires EASD to provide compensatory education to Student for failure to provide a free appropriate public education.
   c. Requires EASD to conduct a functional behavioral assessment.
   d. Requires EASD to reimburse them for all reasonable costs and attorney's fees incurred in their due process hearing against EASD, as well as all reasonable costs and attorney's fees incurred in prosecuting this matter.
   e. Provides any other relief that the court deems necessary and just.

December 19, 2025

*/s/ Zachary A. Meinen*
Attorney for Plaintiffs
800 Wisconsin St.
Building DO2, MB 27
Eau Claire, WI 54703
Ph: 715-456-7920
zach@meinenlaw.com

# Exhibit A



**Before the**
**State of Wisconsin**
**DIVISION OF HEARINGS AND APPEALS**

---

In the Matter of S.W., Student

v.

Elkhorn School District

DHA Case No. DPI-25-0029
DPI Case No. LEA-25-0027

---

## RULING AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

TO:    S.W., Student, by:

Attorney Zachary Meinen
The Law Office of Zachary Meinen
Bldg. DO2, Mailbox 27
800 Wisconsin Street
Eau Claire, WI 54703
Zach@meinenlaw.com

Elkhorn School District, by:

Attorneys Matthew Bell & Rhonda Hazen
Boardman & Clark LLP
1 S. Pinckney St., Ste. 410
P.O. Box 927
Madison, WI 53701-0927
mbell@boardmanclark.com
rhazen@boardmanclark.com

### PROCEDURAL HISTORY

On July 2, 2025, Attorney Zachary Meinen, on behalf of S.W. (Student) and Melissa W. (Parent), filed an expedited due process hearing request with the Department of Public Instruction (DPI) against the Elkhorn School District (District). On July 11, 2025, a prehearing telephone conference was held with the parties, Senior Administrative Law Judge (ALJ) Sally Pederson, presiding. On July 15, 2025, DPI revised the hearing timelines to non-expedited.

On July 17, 2025, the ALJ held a continued prehearing telephone conference with the parties, during which two issues for hearing were discussed and confirmed with the parties, and the hearing and associated filing deadlines were ordered. The parties indicated during the conference that they would not be filing prehearing motions. The hearing was scheduled for September 22 through 25, 2025.

On July 28, 2025, the District requested that the second hearing issue be amended to specify a time frame. With the agreement of the Parent, the second hearing issue was amended

Case 2:26-cv-00469-JPS    Filed 12/19/25    Page 17 of 36    Document 1

as: "Did the District fail to timely refer and evaluate the Student for special education during or after the 2021-2022 school year?"

On August 18, 2025, the District filed a notice of motion and motion for partial summary judgment, with supporting documentation, requesting dismissal of "allegations which occurred before April 10, 2024" on the grounds that such claims are time-barred by Wisconsin's one-year statute of limitations for filing due process hearing requests.

On August 20, 2025, the ALJ held a telephone conference with the parties regarding the summary judgment motion. The parties agreed upon filing deadlines for the Parent's response brief and the District's reply brief, which were consequently ordered by the ALJ.

On August 22, 2025, the Parent timely filed a response to the motion. On August 28, 2025, the District timely filed a reply brief. On September 2, 2025, the Parent filed a surreply brief. By letter dated September 3, 2025, the District asked the ALJ to not consider the surreply brief because the Parent did not file a motion or request to file a surreply brief.

DISCUSSION

A party is entitled to summary judgment when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). "When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial." Wis. Stat. § 802.08(3). The court takes evidentiary facts in the record as true if not contradicted by opposing proof. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25 ,¶ 23, 241 Wis. 2d 804, 623 N.W.2d 751.

The Wisconsin Supreme Court has set forth the methodology for deciding motions for summary judgment. First, the court must examine pleadings to determine whether a claim for relief has been stated and a material issue of fact presented; if a claim for relief has been stated, inquiry then shifts to the moving party's affidavits or other proof to determine whether the moving party has made a prima facie case for summary judgment. If the moving party has made a prima facie case for summary judgment, the court must examine affidavits and other proof of the opposing party to determine whether disputed material facts or undisputed material facts exist from which reasonable alternative inferences may be drawn sufficient to entitle the opposing party to trial. *See Voss v. City of Middleton*, 470 N.W.2d 625, 162 Wis. 2d 737 (1991).

Here, the Parent's hearing request states a claim for relief. In addition to the second amended issue, the Parents allege that, on April 12, 2024, the District incorrectly determined that the conduct which the Student engaged in on March 6, 2024 was not a manifestation of his disability and improperly expelled the Student from school on April 29, 2024. On its face, the

hearing request states a claim for relief, so the next inquiry is whether the District has made a prima facie case for summary judgment.

The District contends that, as a matter of law, it is entitled to summary judgment on issues related to alleged actions or inactions that occurred prior to April 10, 2024 because such claims are time-barred by Wisconsin's one-year statute of limitations.

The statute governing the filing of a due process hearing request in Wisconsin states as follows:

> A parent, or the attorney representing the child, may file a written request for a hearing within one year after the refusal or proposal of the local educational agency to initiate or change his or her child's evaluation, individualized education program, educational placement, or the provision of a free appropriate public education, except that, if the local educational agency has not previously provided the parent or the attorney representing the child with notice of the right to request a hearing under this subdivision, he or she may file a request under this subdivision within one year after the local educational agency provides the notice.
> Wis. Stat. § 115.80(1)(a)1.

In support of its motion, the District included a sworn affidavit from a District school psychologist stating that, on March 18, 2024, she sent an email to the Parent regarding the Student's referral for a special education evaluation and included with the email a copy of the District's "Parents Rights" procedural safeguards notice. (Exhibit A) The school psychologist further affirms that the Parent signed a consent form for additional assessments on March 18, 2024, which confirmed the Parent had been provided notice of procedural safeguards. The District provided copies of the procedural safeguards document and the March 18, 2024 form signed by the Parent with its motion. (Exhibits B and C) The procedural safeguards document includes information about when and how parents can file a request for a hearing.

The Parent filed the hearing request in this matter on July 2, 2025, which was not within one year of March 18, 2024, the date that the District provided her with notice of the right to request a hearing. In its motion, the District acknowledged that the parties entered into a tolling agreement on April 10, 2025, in which the District agreed to consider the Parent's hearing request to have a filing date of April 10, 2025. Accordingly, the District argues that the issue related to the 2021-2022 school is time-barred by Wisconsin's one-year statute of limitations. Based on the affidavit and supporting documentation, the District has made a prima facie case for summary judgment.

The next step in the summary judgment inquiry requires examination of affidavits and other proof presented by the Parent to determine whether disputed material facts or undisputed material facts exist from which reasonable alternative inferences may be drawn sufficient to entitle the Parent and Student to a hearing.

The Parent does not dispute that the District provided notice of procedural safeguards to her on March 18, 2024. There also is no dispute that the parties entered into an agreement tolling the statute of limitations providing for April 10, 2025 as the hearing request filing date.

The Parent has not submitted any affidavits or other proof to this tribunal, other than a copy of Parent's counsel's letter dated March 27, 2025 informing the District that they planned to take legal action against the District regarding these same matters and requested tolling of the statute of limitations.

Instead, the Parent primarily relies upon legal argument to oppose the District's motion, arguing that the issue related to the 2021-2022 school year is not time-barred under the IDEA.

With regard to the time limitations for filing a hearing request, the IDEA states:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.
>
> ***
>
> The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to —
>
> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(C) and (D).

The Parent contends that the "knew or should have known" language in the IDEA is applicable here, even though Wisconsin has a statute with an explicit time limitation, as previously discussed. Essentially, the Parent argues that the "knew or should have known" language from the IDEA must be superimposed upon Wisconsin's statute.

Per the response brief, the Parent did not know about the facts forming the basis for the failure to evaluate in 2021-2022 issue until she received information about the Student being eligible for special education on April 12, 2024 and being offered special education services on May 10, 2024. (Response brief, p. 7) However, the Parent also argues in the same response brief that she did not become aware of the failure to evaluate violation until speaking to her attorney in March 2025. (Response brief, p. 12) The Parent did not offer any affidavits or other evidentiary

proof in support of this argument. Reliance upon the mere allegations in the pleadings in not persuasive.

In addition, the Parent did not cite any binding legal authority from the Seventh Circuit holding that the "knew or should have known" language from the IDEA is applicable in Wisconsin. Notably, the U.S. Court for the Eastern District of Wisconsin has interpreted Wis. Stat. §115.80(1) as allowing only one exception to the one-year filing limitation, namely, when a district failed to provide a parent with notice of the right to request a hearing. *VanDenBerg v. Appleton Area School Dist*., 252 F. Supp 2d 786, 791 (E.D. Wis. 2003). Parent correctly notes that the *VanDenBerg* decision predated the "knew or should have known" language being added to the IDEA during the 2004 reauthorization. However, is noteworthy that Wisconsin did not amend or revise Wis. Stat. §115.80(1) to include the "knew or should have known language" or add any additional exceptions after the 2004 IDEA reauthorization. Accordingly, *VanDenBerg's* interpretation of Wisconsin's statute of limitations for filing a hearing request continues to be relevant.

The Parent also argues that the "misrepresentation" exception in the IDEA is applicable here, such that the issue related to the 2021-2022 school year is not barred by the statute of limitations. *See* 20 U.S.C. § 1415(f)(3)(D). Specifically, the Parent's response brief cites two paragraphs of the hearing request in which the Parent claims that the District misled her into believing that she had to obtain a private diagnosis of the Student prior to a District evaluation and that she was not informed that the District is obligated to identify and evaluate students who are suspected of having a disability or needing accommodations.

This argument is not compelling. First of all, the Parent's pleading does not fit within the IDEA exception in that the Parent does not claim that the District made "specific misrepresentations that it had resolved the problem forming the basis of the complaint." 20 U.S.C. § 1415(f)(3)(D).

Moreover, the Parent has not included any affidavits or evidence in support of this argument and relies merely upon the pleadings to counter the District's motion and supporting evidence. The District submitted an affidavit from its special education director affirming that each year the District provides parents with a copy of the District Handbook that describes the District's obligation to locate and identify students who may need accommodations and informs parents about contacting the District if they believe their child has a disability and needs special education. A copy of the District Handbook was included with the District's motion. The Parent did not deny that it received the Handbook.

The Parent did not present affidavits or other proof showing that there are disputed or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the Parent to a hearing on issues outside of the one-year statute of limitations. The Parent did not present evidence to overcome the District's prima facie case that issues related to alleged actions occurring prior to April 10, 2024 are time-barred by Wisconsin's one-year statute

of limitations. The District is entitled to partial summary judgment as a matter of law that allegations predating April 10, 2024 are time-barred by Wisconsin's one-year statute of limitations.

ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the District's motion for partial summary judgment is granted, and any issue or portion of an issue related to matters before April 10, 2024 is dismissed.

Dated at Madison, Wisconsin on September 8, 2025.

STATE OF WISCONSIN
DIVISION OF HEARINGS AND APPEALS
4822 Madison Yards Way, 5th Floor North
Madison, Wisconsin 53705-5400
Telephone:     (608) 266-7709
Email:           Sally.Pederson@wisconsin.gov

By: _____
    Sally Pederson
    Senior Administrative Law Judge

# Exhibit B

Case 2:26-cv-00469-JPS Filed 12/19/25 Page 23 of 36 Document 1



# Before the
# State of Wisconsin
# DIVISION OF HEARINGS AND APPEALS

In the Matter of S.W., Student

**DECISION**

v.

DHA Case No. DPI-25-0029
DPI Case No. LEA-25-0027

Elkhorn Area School District

The PARTIES to this proceeding are:

S.W., Student, by

Attorney Zachary Meinen
Law Office of Zachary Meinen
Bldg. DO2, Mailbox 27
800 Wisconsin St.
Eau Claire, WI 54703
Zach@meinenlaw.com

Elkhorn Area School District, by

Attorneys Rhonda Hazen and Matthew Bell
Boardman & Clark, LLP
1 S. Pinckney St., Ste. 410
PO Box 927
Madison, WI 53701-0927
rhazen@boardmanclark.com
mbell@boardmanclark.com

## PROCEDURAL HISTORY

On July 2, 2025, Attorney Zachary Meinen, on behalf of S.W. (Student) and Melissa W. (Parent), filed an expedited due process hearing request with the Department of Public Instruction (DPI) under the Individuals with Disabilities Education Act (IDEA) and Wis. Stats.

Chapter 115 against the Elkhorn Area School District (District). DPI referred the matter to the Wisconsin Division of Hearings and Appeals, and Senior Administrative Law Judge (ALJ) Sally Pederson was duly appointed. On July 15, 2025, DPI revised the hearing classification and timelines to non-expedited.

On July 17, 2025, the ALJ held a prehearing telephone conference with the parties, and the hearing was scheduled for September 22 through 25, 2025.

On August 18, 2025, the District filed a notice of motion and motion for partial summary judgment, with supporting documentation, requesting dismissal of allegations that related to matters prior to April 10, 2024, on the grounds that such claims are time-barred by Wisconsin's one-year statute of limitations for filing due process hearing requests.

On August 20, 2025, the ALJ held a telephone conference with the parties to establish filing deadlines related to the summary judgment motion. On August 22, 2025, the Parent timely filed a response to the motion. On August 28, 2025, the District timely filed a reply brief. On September 2, 2025, the Parent filed a surreply brief. On September 8, 2025, the ALJ issued a ruling and order dismissing any issue or portion of an issue related to matters before April 10, 2024.

On September 9, 2025, the ALJ held another prehearing telephone conference with the parties, and the hearing was rescheduled to September 24, 25, and 26, 2025. The hearing commenced as scheduled and was completed on September 25, 2025. The parties timely filed post-hearing briefs and reply briefs on October 17 and 24, 2025. The decision in this matter is due on November 10, 2025.

## ISSUES

1. Did the District incorrectly determine that the Student's conduct on March 5, 2024 was not a manifestation of his disability and, consequently, improperly expel the Student from school on April 29, 2024?

2. Since April 10, 2024, did the District fail to timely provide special education services to the Student?

## FINDINGS OF FACT

1. At the start of the 2023-2024 school year, the Student was a 12-year-old (d.o.b. ████████) regular education student who attended seventh grade at the Elkhorn Area Middle School in the District through open enrollment.

2. In seventh grade, the Student incurred 14 disciplinary referrals between September 14, 2023 and March 5, 2024, which was an increase from sixth grade, when he received only four disciplinary referrals. (D. Ex. 4; P. Ex. 12)

3. In January 2024, the Parent arranged for a private therapist to provide mental health counseling to the Student in school. (Parent testimony, p. 376)

4. In late February 2024, the middle school principal, Ryan McBurney, had a meeting with the Parents and the Student to address a recent uptick in the Student's behaviors (he had six disciplinary referrals in February 2024) and discuss the school's expectations and progressive discipline that would result if the behaviors continued. The six referrals were for three cell phone usage violations and three instances where the Student did "not meet expectations." At the meeting, the Parents did not mention that the Student had an upcoming appointment with a physician regarding his behavior. (D. Ex. 4; McBurney testimony, pp. 194-196, 212-215)

5. Also in late February or early March 2024, Associate Principal Jessica Rima met with the Parents and the Student to discuss a "final warning" regarding his behaviors, and she emailed the Parent a list of supports that the school had been and/or would be providing to the Student to help him succeed with schoolwork and in the classroom, some of which were interventions available to all students. Ms. Rima mentioned in the email that she would ensure "doctors surveys" would be filled out by teachers and returned to the provider. (P. Ex. 3; Rima testimony, pp. 237, 239-240, 272-274; McBurney testimony, pp. 194, 196)

6. On March 5, 2024, the Student engaged in unwanted physical contact with a female teacher at school. The next day, the teacher informed Associate Principal Rima about the incident. The teacher explained to the associate principal that she had told students in her classroom to keep their hands to themselves and take their seats, but the Student then approached her to hug her. The teacher said she was able to turn her body partially away from the Student so that her shoulder was against his chest as she said "no." She again told the Student that she did not want a hug, but he squeezed her harder and did not let go. The teacher stated that the Student was laughing and motioning for other students to join in. She said she was able to duck downwards to get away from the Student and again said "no" as she walked to her desk. The teacher told the associate principal that the Student had also made her uncomfortable a few days prior by running his finger down arm, from her shoulder to her forearm, along the stripes of her sweater. The teacher was upset and emotional while talking to the associate principal about the incidents with the Student. (D. Exs. 1 and 2; P. Ex. 4; Rima testimony, pp. 261-264)

7. As part of her investigation, Associate Principal Rima also interviewed the Student on March 6, 2024 and had him fill out a Behavior Information Form. The Student stated that

he likes to joke around and be funny. He acknowledged that the teacher had told him to sit down, but he instead approached her and "took it too far by giving her hugs and being inappropriate." The Student said the teacher did not want a hug from him and that he also remembered touching her arm. (D. Ex. 2; Rima testimony pp. 265-267)

8. The associate principal also interviewed another student on March 6, 2024 who was a friend of the Student's and had been in the classroom and witnessed the incident. The student stated that the Student was hugging the teacher, but the teacher did not want to be hugged and "kept saying no." (D. Ex. 2; Rima testimony, pp. 268-269)

9. The associate principal informed the middle school principal and the District's Title IX administrator about the incident. She also called the Student's mother on March 6, 2024 to inform her about the incident and that the Student was receiving an out-of-school suspension pending further investigation because the incident involved physical contact with a teacher. The principal then took over handling the matter from the associate principal. (Rima testimony, pp. 263, 268, 270)

10. On March 6, 2024, when the Student was suspended from school and shortly thereafter referred for expulsion, he was a regular education student. (McBurney testimony, pp. 225-226)

11. Approximately a week after the Student was suspended on March 6, 2024, the District began providing him with tutoring at the District's administrative offices for 1 ½ hours per day, three days a week. (Parent testimony, pp. 382-, 383; Student testimony, p. 359; McBurney testimony, pp. 415-416)

12. On March 12, 2024, the Parent had the Student evaluated by Dr. Michelle Snyderman, a pediatrician at Children's Hospital Center for Child Development, who evaluates and treats children with behavioral and development problems. Dr. Snyderman diagnosed the Student with attention deficit hyperactivity disorder (ADHD) and prescribed medication. The Parent had contacted Children's Hospital behavioral health intake in March 2023 to schedule an appointment for the Student, but the appointment did not occur until a year later due to an extensive waiting list. (P. Ex. 2; Snyderman testimony, pp. 28-29)

13. After the Student was suspended and referred for expulsion, Emily Lynd, who was then the District's director of special education, learned that the Parent was having the Student medically evaluated for ADHD, so Ms. Lynd contacted the Parent on March 14, 2024 to ask if the Parent wanted to refer the Student for a special education evaluation. The Parent stated that a physician had recently diagnosed the Student with ADHD, and she wanted to refer the Student for an evaluation. The special education director told the Parent that the District would expedite the special education evaluation. (D. Ex. 5; P. Ex. 6, pp. 1-3; Lynd testimony, pp. 78-80)

14. On March 18, 2024, the Parent provided consent for the District to conduct a special education evaluation of the Student. (D. Ex. 5, pp. 14-16)

15. On April 12, 2024, the District convened an individualized education program (IEP) team to evaluate the Student and determine his eligibility for special education. The IEP invitation indicated that the meeting was also being held to conduct a manifestation determination and develop an initial IEP and placement. The IEP team meeting was attended by the Parents, the director of special education, the special education teacher, the school psychologist, the middle school principal, and the regular education science teacher. (D. Ex. 5, p. 42)

16. The Parent provided the District with a two-page document from Dr. Snyderman dated March 10, 2024 that lists "Patient Instructions." It is not a comprehensive report of Dr. Snyderman's first appointment with the Student. The document states, "I agree with it's appropriate to start medication for ADHD," and it includes information about medication. Dr. Snyderman testified that her first appointment with the Student was on March 12 and that she did not see the Student on March 10, 2024, so the date on the document is apparently an error. (Dr. Ex. 10; Snyderman testimony, pp. 33-35)

17. Prior to filing exhibits for the hearing, the Parents had not provided the District with Dr. Snyderman's Progress Notes that contain detailed descriptions of the doctor's appointments with the Student. The Parent had signed Release of Information forms that provided consent for the District to contact Dr. Snyderman and access the Student's medical records. The District did not request the doctor's progress notes, but the school psychologist, Kristin Mariano, did interview Dr. Snyderman over the telephone as part of the special education evaluation, thereby obtaining information about the Student's first appointment and ADHD diagnosis, which was included in the evaluation report and considered by the IEP team. Dr. Snyderman testified that it is not her practice to release a child's medical records directly to a school district, even with a signed parental release, and that she would not have released the Student's medical records directly to the District if they had requested them. (P. Exs. 2 and 8; D. Ex. 5, p. 24; Mariano testimony, pp. 152-153; Snyderman testimony, pp. 36-40)

18. During the April 12 evaluation meeting, the IEP team reviewed and considered the school psychologist's assessment and evaluation report, assessments completed by District staff, the Student's disciplinary and academic records, and input from the Parents. The school psychologist's assessment and the evaluation report includes: testing results; information from the school psychologist's interviews with the Student, Dr. Snyderman, the associate principal, and the Student's tutor, and information about the Student provided by his teachers and the middle school principal. (D. Ex. pp. 17-32; P. Ex. 6, pp. 12-22)

19. The IEP team determined the Student meets the eligibility criteria for other health impairment (OHI) and needs special education services. The evaluation report noted that the Student had received a medical diagnosis of ADHD, that his teachers reported his inattentiveness and off-task behaviors as having become more intense as the school year had progressed, and his medical records indicated that the Parents had concerns about possible ADHD for approximately two years. Further, the report indicated that the Student has significant struggles sustaining his efforts to complete non-preferred tasks, which affects his education in terms of academic, behavioral, and classroom performance and causes him to need specially designed instruction in attention, math and writing. (D. Ex. pp. 30-32; P. Ex. 6, pp. 18-22)

20. The IEP team did not conduct a formal functional behavioral assessment (FBA) of the Student or develop a behavior intervention plan (BIP) for the Student. (D. Ex. 5; Mariano testimony, p. 144)

21. Immediately after the evaluation determination was completed, the IEP team (with the same participants) continued the meeting to determine whether the Student's behavior on March 5, 2024 was a manifestation of his disability. (Lynd testimony, pp. 117-118; McBurney testimony, p. 221)

22. As part of the manifestation determination, the IEP team reviewed the following records and information:  the school psychologist's assessment report and the evaluation report, which contained the information described above, including:  the Student's academic and disciplinary records; teacher observations of the Student; input from the Parents; testing results; information from the school psychologist's interviews with the Student, Dr. Snyderman, the associate principal, and the Student's tutor, and information about the Student provided by his teachers and the middle school principal. The IEP team also considered information about the March 5 incident that was gathered during the District's investigation. (Mariano testimony, p. 184; McBurney testimony, pp. 221-224)

23. The Parents believed the Student's behavior on March 5 was impulsive and caused by or had a direct and substantial relationship to his ADHD/OHI disability. (D. Ex. 5, p. 65; D. Ex. 6, p. 55; Parent testimony, pp. 389-390, 410)

24. The District staff members on the IEP team all concluded that the Student's behavior on March 5 was not caused by or substantially related to his OHI disability, based upon their experience and knowledge of the Student and his behaviors and the information and records that they reviewed about the Student and the incident, as described above. They noted that the Student continued to hug the teacher even after she said no more than once, and he knew that she did not want to be hugged, so his conduct did not appear to be impulsive behavior, but rather intentional behavior to gain peer attention. As the local education agency (LEA) representative, the special education director agreed with the

majority of the IEP team and determined that the Student's behavior on March 5, 2024 was not a manifestation of his disability. (D. Ex. 5, pp. 65-67; P. Ex. 6, pp. 55-57; Mariano testimony, pp. 186-187; McBurney testimony, pp. 222-223; Lynd testimony, pp. 100, 119-123; Graczyk testimony, pp. 306-307; Mosansky testimony, pp. 347-349)

25. After the manifestation determination was made, the Student's father left the meeting, and consequently, the rest of the IEP team agreed to reconvene the meeting at a later date to develop the Student's IEP. (McBurney testimony, pp. 224-225, 453; Mosansky testimony, p. 349)

26. On April 29, 2024, the school board held an expulsion hearing and expelled the Student from the District until the age of 21, with the ability to apply for readmission in August 2024 for the 2024-2025 school year. (D. Ex. 3; P. Ex. 7)

27. On May 10, 2024, the District reconvened the IEP team to develop an initial IEP for the Student. The IEP contained three annual goals related to math, behavior, and time on task. The IEP included a total of 30 minutes per day of special education/specially designed instruction to be provided in the general education setting, with the time evenly split among the areas of math, behavior, and time on task. The IEP also included numerous supplementary aids and services. (D. Ex. 5, pp. 36, 54-60)

28. On May 14, 2024, the District began providing special education services to the Student, in accordance with his IEP, at SOPHOS, which is an alternative learning school in the District. (Lynd testimony, pp. 124, 128; Parent testimony, p. 413; Arndt testimony, 423, 426, 433)

29. On August 28, 2024, the District convened an IEP team meeting to review/revise the Student's IEP and placement for eighth grade during the 2024-2025 school year. The IEP provided a blended day placement for the Student at SOPHOS at the beginning of each school day and then moving to the middle school at 11:30 AM to attend lunch and academic classes in the afternoon. (D. Ex. 8, pp. 105-106, 119; Arndt testimony, pp. 439-440)

30. In March 2025, the IEP team further revised the Student's IEP to further increase his time at the middle school. The Student had no disciplinary problems, was on the honor roll, and earned high school credits during the 2024-2025 school year. He is currently attending the high school in the District. (D. Ex. 9; Student testimony, pp. 358, 369; Parent testimony, pp. 413-414; Arndt testimony, p. 441)

31. On July 2, 2025, the Parents, by their attorney, filed a due process hearing request with DPI seeking compensatory education, a finding that the Student's conduct on March 5,

2024 was a manifestation of his disability, nullification and voiding of the expulsion
order from the Student's record, and an order requiring the District to conduct an FBA.

DISCUSSION

Jurisdiction

The undersigned ALJ has authority to preside over this due process proceeding pursuant
to Wis. Stat. § 115.80(2).

Burden of Proof

The U.S. Supreme Court has ruled that the burden of proof in an administrative hearing
challenging an IEP is on the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). As
the complainants in this matter, the burden of proof is on the Parents of the Student. The burden
of proof is a preponderance of the evidence. Wis. Stat. §115.80(5)(b).

Manifestation Determination and Expulsion

The IDEA and the related federal regulations set forth the standard that local education
agencies must follow in order change the placement of a child with a disability for disciplinary
reasons. In accordance with 34 CFR § 300.530, a local education agency (LEA) must conduct a
manifestation determination prior to expelling a child with a disability for violating school rules.
If a local education agency determines that the child's behavior was not a manifestation of the
child's disability, it may discipline the child in the same manner as a child without a disability.
34 CFR § 300.535.

With regard to a manifestation determination, the federal regulations state:

(1) Within 10 school days of any decision to change the placement of a child with
a disability because of a violation of a code of student conduct, the LEA, the parent,
and relevant members of the child's IEP Team (as determined by the parent and the
LEA) must review all relevant information in the student's file, including the
child's IEP, any teacher observations, and any relevant information provided by the
parents to determine –

(i) If the conduct in question was caused by, or had a direct and substantial
relationship to, the child's disability; or
(ii) If the conduct in question was the direct result of the LEA's failure to
implement the IEP.

(2)  The conduct must be determined to be a manifestation of the child's disability if the LEA, the parent, and relevant members of the child's IEP Team determine that a condition in either paragraph (e)(1)(i) or (1)(ii) of this section was met. 34 CFR § 300.530(e)(1)-(2). *See also* 20 U.S.C. § 1415 (k)(1)(E)(i).

The IDEA states that a hearing officer "shall hear and make a determination regarding an appeal [of a manifestation determination]" and "may order a change in placement of a child with a disability" in making such determination. 20 USC § 1415(k)(3)(B)(i)-(ii). In addition, under 34 CFR § 300.532, the hearing officer may "[r]eturn the child with a disability to the placement from which the child was removed if the hearing officer determines that the removal was a violation of § 300.530 or that the child's behavior was a manifestation of the child's disability."

The Seventh Circuit Court of Appeals has held that hearing officers in special education hearings under the IDEA are specialists who are "not required to accept supinely whatever school officials testify to … but they are to give that testimony due weight." *Sch. Dist. of Wis. Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 676 (7th Cir. 2002).

In this case, the Student was a regular education student when he was suspended from school on March 6, 2024. When the Parent referred him for special education on March 14, 2024, the District initiated an expedited evaluation of the Student. On April 12, 2024, the IEP team evaluated the Student and determined he meets the criteria for an OHI disability and needs special education, and the IEP team then held a manifestation determination review on that same date. The majority of the IEP team concluded that the Student's conduct on March 5, 2024 was not caused by or substantially related to his OHI disability. The school board subsequently expelled the Student on April 29, 2024.

The credible testimony of District staff, the evaluation report, and the manifestation determination document establish that the IEP team properly conducted a manifestation determination review before the District expelled the Student. The record shows that the IEP team considered all relevant information, including the school psychologist's assessment report the evaluation report, which contained information about the Student's academic and disciplinary records, teacher and staff observations of the Student, input from the Parents, and information from the school psychologist's interviews with the Student, Dr. Snyderman, the associate principal, and the Student's tutor. In addition, the IEP team also considered information about the March 5 incident that was gathered during the District's investigation.

The District staff members of the IEP team all credibly testified about how the Student's behavior related to his ADHD/OHI disability typically presents and why they concluded that his behavior on March 5 was more intentional than impulsive and not caused by or substantially related to his disability. District staff members described that the Student has difficulty sitting still and focusing in class and in completing homework and tasks that he does not enjoy, engages in silly behavior to seek peer attention, and acts impulsively or inappropriately by blurting out comments or interrupting in class. They noted that the Student continued to hug the teacher even

after she said "no." Further, the Student admitted during the investigation that he knew the teacher did not want to be hugged.

The Parents argue that the IEP team improperly failed to consider Dr. Snyderman's opinion and progress reports. However, the school psychologist interviewed Dr. Snyderman and included that information in the evaluation report, which was considered by the IEP team during the manifestation determination. The Parents could have provided Dr. Snyderman's progress notes about the Student to the IEP team but failed to do so. Dr. Snyderman testified that she would not have released the Student's medical records directly to the District even if they had asked, so it is unreasonable for the Parents to blame the District for not having and considering the doctor's progress notes about the Student.

The Parents also argue that the District should have invited the Student, Dr. Snyderman, and Associate Principal Rima to the manifestation determination review meeting. This argument also lacks merit. The middle school principal, who supervised Ms. Rima and took over the investigation, attended the IEP meeting. The Student could have attended the meeting with the Parents, and the Parents could have invited Dr. Snyderman to the meeting. The District was not legally obligated to invite Dr. Snyderman to the meeting. Moreover, the District made an effort to obtain information from Dr. Snyderman and, in fact, did obtain information from her through the school psychologist's telephone call to her.

The Parents point out that in her progress note dated March 12, 2024, Dr. Snyderman states that, "At this point, it is reasonable to attribute most of these worsening behaviors – including [the Student's] failure to read important social cues/follow social norms – to ADHD." Again, the Parents could have provided this progress note to the IEP team and failed to do so. Further, Dr. Snyderman's statement was not so convincing or conclusory regarding the Student's March 5 behavior that it would have likely changed the IEP team's manifestation determination, even if the team had received her progress note containing that statement.

At the hearing, Dr. Snyderman testified that she believed the Student's conduct on March 5, 2024 was caused by his ADHD. She conceded that her knowledge and opinion about the incident was based solely upon information she had received from the Parents and Student. When asked if reviewing the District's manifestation review document prior to the hearing changed her opinion, she testified that, "It did not change my opinion that his conduct *could have* been caused by his ADHD." (emphasis added) Dr. Snyderman's progress notes and testimony are not convincing or compelling enough to show that the IEP team was wrong in determining that the Student's behavior on March 5 was not caused by or substantially related to his disability.

In their post-hearing briefs, the Parents also argue that the manifestation determination and evaluation of the Student was improper or insufficient because the District did not conduct an FBA of the Student and did not complete the Student's IEP prior to the manifestation determination. However, the law requires that a school district conduct an FBA of a child with a

disability if the IEP team determines that the behavior *was* a manifestation of the child's disability. 34 CFR § 300.530(i). (emphasis added) Here, the IEP team determined that the behavior was not a manifestation of the Student's disability, so it was not required to conduct an FBA. The law does not require the District to complete a Student's IEP or conduct an FBA prior to conducting the manifestation determination. Moreover, the Parents did not raise the Student's evaluation as an issue that was noticed for hearing and did not seek to amend the hearing issues in a timely manner under Wis. Stat. §115.80(1)(g). This issue has not been properly brought before the tribunal and, accordingly, the argument will not be addressed herein.

The Parents failed to meet their burden of showing that the District incorrectly determined that the Student's conduct on March 5, 2024 was not caused by or did not have a direct and substantial relationship to his disability under 34 CFR § 300.530(e)(1)(i). Based on the record, I find that the IEP team's manifestation determination was legally sound and correct and that the District properly expelled the Student on April 29, 2024.

Timely Provision of Special Education Services

When a LEA receives a special education referral for a child, it must appoint an IEP team to conduct an evaluation to determine if the child meets the eligibility criteria for special education. Wis. Stat. §§ 115.78(1m) and (2)(a). However, the LEA cannot conduct a special education evaluation of a child until it receives informed consent from the child's parents. 34 CFR § 300.301(a); Wis. Stat. § 115.782(1)(b). Upon receiving parental consent, the LEA has 60 days to conduct the evaluation and determine if the child is a child with a disability who needs special education services. 34 CFR § 300.301(c)(1); Wis. Stat. §§ 115.78(3)(a).

If the child is determined to be a child with a disability in need of special education, the LEA has 30 days to convene an IEP meeting to develop an IEP and placement for the child. 34 CFR § 300.323(c)(1); Wis. Stat. § 115.78(3)(c).

Here, the issue is whether the District failed to timely provide special education services to the Student since April 10, 2024. Based on the record, there is no question that the District's provision of special education services to the Student has been timely.

The District received a special education referral from the Parent on March 14, 2024 and immediately began the evaluation process. The law allows 60 days for a special education evaluation, but the District conducted the evaluation on an expedited basis in light of the Student's suspension and expulsion referral. On April 12, 2024, the IEP team determined that the Student qualified as a child with an OHI disability.

After the evaluation portion of the IEP meeting on April 12, the IEP team conducted the manifestation determination review, concluding that the Student's conduct on March 5, 2024 was not caused by or substantially related to his disability. The Student's father then left the meeting.

The IEP team had planned to develop the Student's initial IEP on that same date, as evidenced by the IEP meeting invitation, but decided to postpone the IEP development portion of the meeting.

The IEP team met to develop the Student's IEP on May 10, 2024, which was within the 30 days required by law. The District began providing special education services to the Student, pursuant to his IEP, on May 14, 2024. This provision of special education services was timely and did not deny the Student a free, appropriate public education. The Parents did not meet their burden of showing that the District failed to timely provide the Student with special education services since April 10, 2024.

In their post-hearing briefs, the Parents argue that the District "was on notice" that the Student may have been a child with a disability since the end of his fifth-grade year, based upon the Parent's comments to school staff. The extension of this argument is that the District did not timely evaluate the Student for special education and did not timely provide special education services to the Student.

By raising these arguments, the Parents are apparently ignoring or attempting to circumvent this tribunal's September 8, 2025 ruling and order granting partial summary judgment that dismissed any issue or portion of an issue related to matters that predated April 10, 2024. The legal reasoning of the partial summary judgment ruling will not be restated here, but the Parents' attempt to claim that the District failed to timely provide special education services to the Student prior to April 10, 2024 is barred by the September 8, 2025 ruling and order.

All of the arguments presented by the parties were considered by the undersigned ALJ. The courts have recognized that an administrative decision-maker "is not required to make findings that respond to every issue [a party] raised in its request." *Peace Lutheran Church & Acad. v. Vill. of Sussex*, 2001 WI App 139, ¶ 33, 246 Wis. 2d 502, 631 N.W.2d 229. Thus, any arguments and evidence on the record that were not specifically mentioned were determined to not merit comment in the decision.

CONCLUSION OF LAW

1. The District correctly determined that the Student's conduct on March 5, 2024 was not a manifestation of his disability under 34 CFR § 300.530(e), and consequently, the District did not improperly expel the Student from school on April 29, 2024.

2. The District timely provided the Student with special education services since April 10, 2024.

ORDER

For the reasons set forth above, it is HEREBY ORDERED that the due process hearing request is dismissed.

Dated at Madison, Wisconsin on November 10, 2025.

STATE OF WISCONSIN
DIVISION OF HEARINGS AND APPEALS
4822 Madison Yards Way, 5th Floor North
Madison, Wisconsin 53705-5400
Telephone:    (608) 266-7709
EMAIL:        Sally.Pederson@wisconsin.gov

By: _____
    Sally Pederson
    Senior Administrative Law Judge

---

**NOTICE OF APPEAL RIGHTS**

Any party aggrieved by the attached decision of the administrative law judge may file a civil action in the circuit court for the county in which the child resides or in federal district court, pursuant to Wis. Stat. § 115.80(7), 20 USC § 1415, and 34 CFR § 300.512. The court action must be filed within 45 days after service of the decision by the Division of Hearings and Appeals.

It is the responsibility of the appealing party to send a copy of the appeal to the Director of Special Education, Special Education Team, Department of Public Instruction, 125 South Webster Street, Madison, WI 53703. The Department of Public Instruction will prepare and file the record with the court only upon receipt of a copy of the appeal. The record will be filed with the court within 40 days of the date that the Special Education Team at the Department of Public Instruction receives the appeal.